**FEDERAL DATA CORPORATION, Appellant,**

v.

**The UNITED STATES, Appellee.**

No. 89-1280.

United States Court of Appeals, Federal Circuit.

Aug. 9, 1990.

Daniel S. Koch, Kurz Koch & Doland, Washington, D.C., argued, for appellant. With him on the brief were Marvin S. Haber, Gen. Counsel, and Ann B. Axelrod, Corporate Counsel, Federal Data Corp., Bethesda, Md.

Terrance S. Hartman, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Also on the brief were Lloyd M. Weinerman, Rodney L. Benson, and Marion T. Silva, Office of Gen. Counsel, Dept. of Health and Human Services, Baltimore, Md., of counsel.

Before NIES, Chief Judge,* ARCHER and MICHEL,** Circuit Judges.

ARCHER, Circuit Judge.

Federal Data Corporation appeals from the decision of the General Services Administration Board of Contract Appeals (GSBCA or Board), GSBCA No. 9732-P, 89-1 BCA (CCH) ¶ 21,414 at 107,922 (December 9, 1988), denying its claim for an award of its proposal preparation and protest costs with respect to solicitation number HCFA-RFP-87-031/DA. We affirm.

## Background

The facts underlying this appeal are more completely set forth in the board's opinion, *id.* at 107,923, and a familiarity

---

* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.

** Circuit Judge Paul R. Michel was added to the panel with the consent of the parties following the death of Circuit Judge Jean Galloway Bissell on February 4, 1990.

with that opinion is presumed. On June 11, 1987, the Health Care Financing Administration (HCFA) of the Department of Health and Human Services (HHS) issued an automatic data processing equipment (ADPE) solicitation or request for proposals (RFP) for its End–User Computing/Office Automation project. Federal Data and nine other vendors, including International Business Machines, Inc. (IBM) and Wang Laboratories, Inc. (Wang), submitted proposals to HCFA in response to the RFP. On July 18, 1988, HCFA notified the unsuccessful vendors that IBM had been awarded the contract at a total price (evaluated cost) of $16,111,686. Certain technical information regarding IBM's proposal was also provided the unsuccessful parties.

On about August 10, 1988, Wang protested the award of the contract to IBM on the grounds that HCFA had conveyed inaccurate information regarding its assessment of each vendor's initial proposal. As a result of Wang's protest, HCFA suspended performance of the contract and decided to reopen the negotiations. Prior to doing so, the contracting officer sent a letter dated September 13, 1988, to each vendor, stating, in part, as follows:

> In selecting the above course of action, I recognize that certain pricing information regarding the awardee has been publicly disclosed and other information concerning the awardee's technical scoring has been conveyed during the debriefing process. As a result, it is necessary to place all vendors on an equal footing with regard to the disclosed information.
>
> Accordingly, shortly before the negotiations are reopened, HCFA will provide each offeror, who elects to participate in accordance with the procedures set forth below, with the following information: (1) the identity of all offerors in the competitive range; (2) the total evaluated prices of all offerors; (3) the total technical score of all offerors. HCFA will then reopen negotiations with all vendors who have consented to the release of such information.

*Federal Data*, 89–1 BCA (CCH) at 107,924–925. This approach was chosen because, in the contracting officer's opinion, HCFA's ADPE need was so acute that "it would not be practical to cancel the procurement and begin again." *Id.* There followed a series of discussions between the vendors and the contracting officer regarding his letter of September 13. The board found that Federal Data "requested debriefings and a revision of the commercial availability date [1] in the solicitation," but that it did not "even preliminarily agree[ ] to the terms of the September 13 letter." *Id.* at 107,925.

On September 27, 1988, Federal Data filed its initial protest, which was dismissed without prejudice on the joint stipulation of Federal Data and HHS. When the parties failed to reach a settlement satisfactory to both sides, the protest was refiled on October 4, 1988. Both the September 27 and the October 4 protests contained two counts which related to the errors in the original solicitation and sought as relief an award of proposal costs, protest costs and attorney fees, together with a suspension of the delegation of procurement authority.

In a telephonic conference on October 13, 1988, between the board's administrative judge, counsel for Federal Data, and representatives of HHS, Federal Data's counsel was asked by the administrative judge whether Federal Data wished to continue competing for the contract. Counsel stated that Federal Data would not compete further "because it had submitted its first best and final offer (BAFO) on the basis of the information that HHS later determined to be erroneous, and its proposal was not likely to be very highly evaluated under HHS's plan for the recompetition." By letter of the same date, HHS confirmed to Federal Data that its "prices and technical scores" would not be released to other vendors in view of Federal Data's statement that it would not participate in the reopened solicitation.

Thereafter, on October 18, 1988, Federal Data filed an amended protest which added new counts III, IV, and V. New count IV, on which this appeal is solely grounded,

1. This date was subsequently revised by the contracting officer.

related to HHS' proposed plan for remedying the errors in the first solicitation. Federal Data's amended protest only sought its proposal preparation costs and the costs of the protest, including attorney fees, and did not request the other relief sought in the original protest. On October 28, 1988, Federal Data filed a stipulation "confirming that it would not compete further for the contract at issue in this protest." *Federal Data*, 89–1 BCA (CCH) at 107,926.

The board either dismissed or denied each of Federal Data's five counts.[2] As noted, Federal Data appeals only the board's denial of count IV to this court. Count IV asserts, in pertinent part, "that HHS's proposed remedy ... violates FAR 15.610(d), in that the disclosure of the prices and scores of all offerors would constitute ... an auction." *Federal Data*, 89–1 BCA (CCH) at 107,927. FAR 15.-610(d) states, in part:

> (d) The Contracting Officer and other Government personnel involved [in written or oral discussions in connection with negotiated procurements] shall not engage in—
>
> .  .  .  .  .
>
> (3) Auction techniques, such as—
>
> (i) Indicating to an offeror a cost or price that it must meet to obtain further consideration;
>
> (ii) Advising an offeror of its price standing relative to another offeror (however, it is permissible to inform an offeror that its cost or price is considered by the Government to be too high or unrealistic); and
>
> (iii) Otherwise furnishing information about other offeror's prices.

48 C.F.R. § 15.610(d) (1987).

Count IV was denied by the board notwithstanding HHS's "violation of the letter of the FAR," *Federal Data*, 89–1 BCA (CCH) at 107,930, because, in the board's view, "HHS has endeavored to correct its admitted error in a way that affords equal treatment to all offerors on the reopened procurement, and allows for the most competition available under the circumstances," and is thus covered by a "practical exception to the FAR." *Id.* at 107,-932.

## DISCUSSION

Our review of decisions emanating from the boards of contract appeals is governed by 41 U.S.C. § 609(b) (1988). On any question of fact, a board's findings are final and conclusive, unless it is established, on the basis of the record, that the decision is fraudulent, arbitrary or capricious, so grossly erroneous as to necessarily imply bad faith, or not supported by substantial evidence. *Id.* We may engage in *de novo* review of a board's conclusions of law, but the legal interpretation of a tribunal having expertise is helpful to us, even if not compelling. *See Erickson Air Crane Co. v. United States*, 731 F.2d 810, 814 (Fed.Cir. 1984).

Following oral argument in this case, this court ordered the parties to submit supplemental briefs regarding the board's jurisdiction over Federal Data's protest. After review of the facts, the law and applicable authorities, we conclude that Federal Data lacked the requisite interest to challenge the agency's action on the ground set forth in count IV. Prior to amending its protest to include count IV, Federal Data had withdrawn from participating in the procurement and was no longer an interested party as required by the

---

**2.** Counts I and II were dismissed for failure to state a valid basis for protest because the action protested was the erroneous award of the contract to IBM, which HHS had previously recognized and corrected by suspending the award. New count III alleged that, had the erroneous information not been disseminated in the original solicitation, Federal Data would have been awarded the contract. New count III was denied by the board as being too speculative to support relief and, in so doing, the board noted that Federal Data admitted that it could not be determined what the result of the bids would have been if the error by HHS had not been made. New count IV was filed after Federal Data notified the board that it would not participate further in the procurement, but was deemed timely and denied on the merits. New count V was described by the board as a "catch-all" protest having "no merit" and "not pursued."

statute.[3]

■ Under 40 U.S.C. § 759 (1988), a protest may be filed only by an "interested party," which is defined at 40 U.S.C. § 759(f)(9)(B) as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." The statute imposes two requirements on any party who would protest an agency's procurement before the board. The first is that the party must be an "actual or prospective bidder." *See MCI Telecommunications Corp. v. United States,* 878 F.2d 362 (Fed.Cir.1989). The second is that such a bidder must have a "direct economic interest [that] would be affected by the award of a contract or failure to award the contract." *See United States v. IBM,* 892 F.2d 1006, 1010 (Fed. Cir.1989).

■ In holding that Federal Data was an interested party, the board stated:

> because of [Federal Data's] status as a former offeror whose withdrawal from the competition is based on the very actions of the Government that it contests, and because [Federal Data] has not relinquished its right and indeed manifests a desire to compete for the contract at issue should we find the Government's conduct unlawful, we conclude that [Federal Data] is, in the circumstances of this case, an interested party to pursue Counts IV and V of its amended complaint.

*Federal Data,* 89–1 BCA (CCH) at 107,927. In view of our decisions in the *MCI* and *IBM* cases, neither of which was available to the board at the time of its decision, the board's reasoning must be rejected.

In *IBM,* this court discussed the statutory "direct economic interest" prong of interested party status:

> The board was troubled by the "logic" that would allow the award of a questionable procurement to go unchallenged if the second-lowest bidder did not file a

protest. It believed this result would be "contrary to the notions of full and open and fair and equal competition and would significantly undermine the integrity of the procurement and protest processes." [ ] But, as the Supreme Court has said in an analogous context,

> [t]he requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process. It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome.

[*Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1368–69, 31 L.Ed.2d 636 (1972).] Congress has decided that the coincidence of a disappointed bidder's "direct economic" interest with the public interest adequately accommodates both. By striking a different balance more solicitous of the latter, the board has upset this congressional scheme. Congress simply did not intend for the board to entertain the protests of innumerable disappointed bidders *who have little or no chance of receiving the contract.*

892 F.2d at 1011 (emphasis added).

Under the interpretation of "interested party" in *IBM,* the right to protest an agency's procurement practices before the board is limited and may be exercised only by an actual or prospective bidder who would have been in a position to receive the challenged award. The board's protest authority does not extend to disappointed bidders who have no chance of receiving the contract.

■ In this case, Federal Data knowingly took itself out of the bidding prior to filing its amended protest, with the new count IV that underlies this appeal. It affirmatively relinquished any chance of

---

**3.** Since none of the issues in counts I–III and V are before us, we need not decide whether Federal Data was an interested party within the meaning of 40 U.S.C. § 759 to protest with respect to those issues.

receiving the contract by that action. Consistent with its status as a non-bidder, Federal Data's amended protest did not seek to have the board "suspend, revoke, or revise ... the delegation of procurement authority applicable to the challenged procurement." 40 U.S.C. § 759. Instead, it sought only bid preparation costs of the initial solicitation and its protest costs and attorney fees. Under these circumstances, Federal Data did not have the requisite "direct economic interest" in the contract, *see* 40 U.S.C. § 759(f)(9)(B), to be an interested party at the time it filed its amended protest. *See IBM*, 892 F.2d at 1011.

■ Federal Data argues that it "should not be forced by the very action of a respondent it is challenging as allegedly illegal, to disclose data of strategic value to competitors, solely in order to continue its validly raised challenge to the legality of HHS' flawed rescue efforts." This is not, however, the position in which Federal Data stands. It withdrew from the competition before raising its challenge to the proposed agency action. Moreover, the statutory requirement for expeditious action by the board with respect to a pre-award protest is adequate to protect against the forced, improper disclosure of confidential information. Under 40 U.S.C. § 759(f)(2), the board is required upon request by an interested party to hold a hearing within ten days to determine whether it should suspend "the protested procurement authority on an interim basis until the board can decide the protest." With these procedures available, we find no merit in Federal Data's argument that it was either forced to withdraw from the bidding or improperly forced to reveal data of strategic value to competitors. The alleged dilemma posited could have been resolved by a request for an accelerated hearing and an interim suspension of the protested procurement authority.

In its opinion, the board indicated that Federal Data's stated desire to compete in a later solicitation, if the board found the Government's conduct unlawful, was sufficient in the circumstances to make Federal

Data an interested party. Such an argument was explicitly rejected by this court in *MCI*, where we said:

> MCI's stated intention to submit a proposal in response to any resolicitation, and its efforts to secure resolicitation by filing a protest, can do nothing to create the necessary interested party status.
>
> . . . .
>
> Based on our analysis, it was unnecessary and inappropriate for the board to determine the likelihood that MCI's charges would result in a resolicitation of the contract.

878 F.2d at 365–66. *See also IBM*, 892 F.2d at 1011 ("The speculative prospect of cancellation of the solicitation and initiation of a new one is insufficient to suffuse all other bidders with the requisite interest to support standing."). Thus, reference to a "prospective bidder" in the definition of interested party in the statute does not include one who only intends to bid in the event of a reprocurement.

■ Finally, Federal Data contends that it is entitled to seek bid preparation and protest costs through the protest procedure even though the relief requested in its protest did not include suspension, revocation or revision of the challenged procurement. Under 40 U.S.C. § 759(f)(5)(C) the board is authorized to award such costs as follows:

> (C) Whenever the board makes such a determination [*i.e.*, a determination "that a challenged agency action violates a statute or regulation or the conditions of any delegation of procurement authority issued pursuant to this section," 40 U.S.C. § 759(f)(5)(B) ], it may, in accordance with section 1304 of Title 31, further declare an appropriate interested party to be entitled to the costs of—
>
> (i) filing and pursuing the protest, including reasonable attorney's fees, and
>
> (ii) bid and proposal preparation.

This paragraph, like section 759(f)(1) of Title 40 U.S.C., which delineates who may protest a procurement action, provides relief only to an "interested party."[4] Since

---

**4.** By limiting the board's authority to award bid

preparation costs to bidders who are interested

we have held that Federal Data is not an interested party to pursue a challenge to HHS' procurement authority on the grounds set forth in count IV of the amended protest, it similarly does not have interested party status to seek bid preparation and protest costs on these same grounds.

In sum, Federal Data abandoned any direct economic interest it had in the contract award process when it chose to withdraw from the procurement. *See* 40 U.S.C. § 759(f)(9)(B). It could have continued to compete for the contract award as the other bidders did and could have utilized the protest procedures available to an interested party to correct any deficiencies it perceived in the procurement process. Accordingly, we affirm the board's denial of Federal Data's protest on the grounds set forth in count IV of its complaint, but do so for different reasons as stated above.

AFFIRMED.

parties, Congress has implicitly recognized that they are generally costs of doing business to be borne by the bidders rather than by the government.