**CLIENT NETWORK SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Catapult Technology, Ltd., Intervenor.**

No. 05–377C.

United States Court of Federal Claims.

April 6, 2005.

Eric J. Marcotte, Winston & Strawn L.L.P., Washington D.C., for Plaintiff.

John N. Kane, Jr., U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington D.C., for Defendant.

Thomas P. Humphrey and John E. McCarthy, Crowell & Moring, Washington D.C., for Defendant–Intervenor.

## *OPINION*

SMITH, Senior Judge.

### *INTRODUCTION*

This case pits the needs of any administrative system against an apparent unfair loss of a contract. Plaintiff was awarded a contract by the Department of Energy (DOE) as qualified under Small Business Administration (SBA) rules. A disappointed bidder filed a challenge with the SBA that Plaintiff did not meet the small business criteria of the agency and its regulations. SBA initially determined that indeed Plaintiff did not meet that criteria and DOE withdrew the contract from Plaintiff, eventually awarding it to the challenger, who is the Intervenor here. Three days after the contract was re-awarded, but before contract performance began, the appellate level of SBA (OHA) overturned the determination that Plaintiff was not a small business and remanded to the initial SBA decision-maker. If this appellate rever-

sal had occurred before DOE re-awarded, the CO would have reinstated the contract to Plaintiff. However, the 3 day gap made his decision discretionary under SBA regulations. DOE regulations say nothing on this point. The CO, in any event, refused to exercise his discretion to reinstate the contract to the original awardee (Plaintiff here).

Several things are apparent here. First, there is a presumption that the original award was in the best interest of the Government at the time it was accepted. Second, Congress fully contemplated the potential for this type of dispute when it inserted the SBA into the procurement process. Third, the Government has a legitimate interest in administrative certainty when awarding contracts. Fourth, the Court, and historically other *fora*, have been given jurisdiction over this type of case in order to ensure fairness to the individual bidder, the integrity of the procurement process, and that the Government makes the best procurement decisions for the tax payer. These interests clash in this case.

If the initial SBA size determination was wrong, then Plaintiff has lost a valuable contract by reason of a Government misjudgment. The taxpayer has also been denied the best deal. However, this problem is inherent where the SBA has a role in government procurement. Of course, Congress found this role to be based on an important national concern; fostering small business. The Court is thus faced with 3 questions it must answer. First, does it have subject matter jurisdiction? Second, does the complaint state a cause upon which this Court has the power to grant relief? And third, did the CO abuse his discretion when he refused to re-award the contract to Plaintiff? The Court believes the first 2 questions should be answered in the affirmative. This means the 12(b)(1) and (6) motions must be **DENIED**.

The third question is the hardest to answer because the mandates from Congress clash. In order to find that the CO abused his discretion the court must determine that the CO either acted in bad faith (for which there appears to be no evidence) or that his action is so inconsistent with DOE's actual need for certainty that it can not be justified

in light of Plaintiff's small business status at the time of the OHA reversal. This is a tough standard to meet. The Court has not heard specific argument on this point, however, it has some preliminary views that may help the parties. So far, the description of the CO's decision does sound reasonable. The DOE in this case is faced with a real need for computer services. Reissuing the contract to Plaintiff would add an additional level of uncertainty to the process. If the contract was returned to Plaintiff and the ongoing OHA remand ultimately finds that CNSI was not an 8(a) small business, then DOE would yet again have to terminate the contract with Plaintiff, and presumably the Intervenor would again be given the contract a second time. Thus, after one award and three re-awards the Government would only then get its IT network. The systemic interest in preventing this seems strong indeed.

This would be a harsh result to CNSI if indeed they ultimately prevail in their SBA classification. However, justice is not a free good, as the economists say. In this case it takes time and imposes costs. Unfortunately there is no way to instantly determine the "correct" answer to the SBA dispute. In fact there may be no "correct" answer, just a matter of conflicting regulatory determinations. In light of this situation, the Court is inclined to deny Plaintiff relief on the merits. However, Plaintiff and Defendants should be given an opportunity to focus on this specific issue. The Court is open to their arguments or evidence.

After full briefing and oral arguments, the Court **DENIES** Defendant's 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction and **DENIES** Defendant–Intervenor's 12(b)(1), or alternatively 12(b)(6) Motion to Dismiss.

### *FACTUAL BACKGROUND*

Client Network Services, Inc. (CNSI) is an information technology company, which is a participant in the Small Business Administration's 8(a) Business Development Program, for purposes of federal government contract set-asides. Complaint ¶ 14. When its Yucca Mountain Project Office of Civilian Radioactive Waste Management needed new

computer network services, the Department of Energy (DOE) solicited a handful of such small businesses through a Request for Quotations (RFQ)[1]. The August 6, 2004 RFQ echoed regulatory competition criteria, that DOE would award the contract to the "responsible offeror" whose conforming offer would be "most advantageous" to the Government from among the participating vendors. Pl. Appendix Tab 1, pg. 65. It also contemplated written submission of a 30 day phase-in plan, detailing and ensuring smooth transition from the then existing IT team. Complaint ¶ 11. The solicited vendors had under three weeks to submit their responsive offers, with bids due August 24, 2004. Complaint ¶ 6. After a month's deliberation, on September 24, 2004 DOE notified the vendors that it had selected CNSI for contract DE–RQ28–04RW1297.

### PROCEDURAL HISTORY

Within a week of DOE's award to CNSI, disappointed bidder Catapult challenged CNSI's size eligibility with the SBA, arguing the North American Industry Classification System (NAICS) schedule applied. Complaint ¶ 16. On October 28, 2004, the SBA Philadelphia Area Director concluded that CNSI was other than a small business concern under that standard. Complaint ¶ 23. Seven days later, on November 4, 2004 CNSI exercised its administrative right to appeal that adverse size determination, filing with the OHA. Id. Now operating under the Area Office ruling, on November 8, 2004 DOE terminated it's award of the Yucca Mountain IT contract with CNSI. While the OHA was considering CNSI's appeal, DOE then re-awarded the contract to Catapult on February 8, 2005. Three days later, OHA issued its order of remand, vacating the Area Office's October size determination. Complaint ¶ 25. After discovering that DOE would stand by its re-award to Catapult even in light of the OHA remand, CNSI lodged a protest first with the agency, and then with GAO on February 17, 2005. Complaint ¶ 27. On March 3, 2005 GAO dismissed CNSI's

protest, finding that DOE had discretion not to abide by an after-award OHA decision correcting an SBA size ruling. Complaint ¶ 28. On March 18, 2005 Plaintiff CNSI filed in this Court asking us to declare DOE's decision not to reinstate CNSI as successful bidder as arbitrary and capricious, and to permanently enjoin the Government from performance of the task order under the RFQ awarded to Catapult on February 8, 2005. Plaintiff's Prayer for Relief, (a) and (c). In response, Defendant filed its 12(b)(1) Motion to Dismiss, and Intervenor Catapult filed its Motion to Dismiss arising under RCFC 12(b)(1) or, alternatively, 12(b)(6).

### THE 12(b)(1) STANDARD OF REVIEW

■ Presented in this case is a post-award bid protest invoking the Court of Federal Claims' injunctive powers. Defendant argues this Court has no subject matter jurisdiction to entertain a complaint under RCFC 12(b)(1). While a complaint will not be dismissed by a federal court unless it appears to the court that Plaintiff can prove no set of facts warranting relief, the burden of proving jurisdiction to hear the Complaint, rests with the party who seeks relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and *Alder Terrace v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998). Applying this threshold test, the Court's examination of the facts alleged in the Complaint, cast against Congress's enabling statute, is necessarily a limited task where we are "obligated to assume all factual allegations to be true, and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995)(*citing Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### DISCUSSION

■ Defendant argues that, in its Complaint, CNSI does not allege a claim of unreasonable, therefore unlawful, government procurement, but rather protests post-award, administrative action. Relying heavi-

---

1. While the RFQ itself did not expressly limit bidders to 8(a) qualified small businesses, instead insisting on GSA Federal Supply Schedule contract holders, the accompanying email from the contracting officer read, "Your firm has been selected to participate in a competitive 8(a) award." Complaint at ¶ 13, 19 and Pl. Appendix, Tab 1.

ly on its reading of Judge Hewitt's recent decision in *Chapman Law Firm*, Defendant contends that, because Plaintiff seeks the undoing of an administrative (not procurement) decision, the Court has no Tucker Act bid protest jurisdiction. Defendant's Motion to Dismiss, pg. 8 (*citing Chapman Law Firm v. United States*, 63 Fed.Cl. 25, 36 (2004)). Defendant argues that, because of the timing and sequence of the facts in this case, CNSI is an administration-protestor, not a bid-protestor. There is one obstacle that makes Defendant's argument untenable here; namely, The Administrative Disputes Resolution Act. Among those 1996 Amendments, Congress expanded the Tucker Act, vesting this Court with post-award bid protest jurisdiction. With the ADRA, the Court is mandated to render judgment on actions brought by interested parties who object to a solicitation for bids for a proposed contract, the award of a contract or any alleged violation of statute or regulation in connection with a federal procurement. 28 U.S.C. § 1491(b)(1) (2000). The Tucker Act, as amended, requires this Court to exercise jurisdiction in any case, pre- or post-award, where a bidder is unfairly denied a contract. This is precisely Plaintiff's claim[2]. Here, the Plaintiff's complaint is that it was mistakenly excluded from the re-award. Defendant's argument would make that arguably unfair exclusion, inarguable, for it would be the very reason for denying this Court subject matter jurisdiction. This is the precise inverse of the defendant who kills his parents and then seeks clemency because he is an orphan. Whether Plaintiff's exclusion was correct or not, at this stage of the litigation the Court must accept this claim as the basis for jurisdiction. Further, the Defendant and Intervenor's position ignores the reality of this case. Plaintiff is suing because it did not get the contract, not because of some post-award, administrative dispute. If the Court found no jurisdiction here it would be ignoring Congress' very purpose in mandating this jurisdiction.

Defendant argues that Judge Hewitt's *Chapman* decision "rejected the idea that this Court would evaluate such a claim that's beyond the jurisdiction of this Court." However the *Chapman* decision turned on an importantly different time line of events, and Judge Hewitt explained her reasoning, "Because it is undisputed here that plaintiff did not file its appeal *prior to* the contract award and it is undisputed that OHA did not issue a decision before HUD awarded HMBI the contract, Chapman cannot establish that the procurement procedure for this HUD contract" raised a decisive breach of SBA size appeal regulations. *Chapman*, at 36 (emphasis added). By first winning the contract, losing it due to a size finding, timely appealing its adverse size determination, *and then* having it re-awarded to another bidder by virtue of the contracting officer's exercise his regulatory discretion while that appeal was pending, Plaintiff CNSI presents this Court with a markedly different fact pattern than *Chapman*. The *Chapman* language and reasoning are instructive not only for the factual distinction they present, but their recognition of this process as a "procurement procedure." *Id.*

■ Defendant and Intervenor further argue that, because DOE re-awarded to Catapult during the window of time between CNSI's adverse size determination and its ultimate remand, CNSI was not then an eligible bidder, and therefore is not for purposes of 28 U.S.C. § 1491(b)(1), an "interested party."[3] Invoking the Federal Circuit's 1989 *IBM* decision for the test of who is an interested party for Tucker Act standing, Defendant concludes that then-ineligible CNSI had no, and arguably still has no, stake in a protest of DOE's re-award because it could not have a direct economic interest on February 8, 2005. This begs the question of whether CNSI should have been given the

---

2. "We are a small business. We should have had the award. We have an adverse decision because we were knocked out of the running." John Marcotte, for Plaintiff Transcript of April 1, 2005 Oral Argument.

3. "To have standing to sue in a bid protest, CNSI must be deemed an interested party within the meaning of the Tucker Act. . . . . A protester lacks a direct economic interest, and thus lacks standing, if it was incapable of receiving the award at the time the award was made." *Defendant's Motion to Dismiss*, pg. 10 (citations omitted).

contract. A careful examination of *IBM* and *American Federation of Government Employees* undercuts this argument. For the *IBM* court, Chief Judge Mayer explained that standing, for purposes of GSBCA's Brooks Act jurisdiction, is more narrow than *Sierra Club* APA standing and that Congress excludes "innumerable disappointed bidders who have little or no chance of receiving the contract." *U.S. v. IBM*, 892 F.2d 1006, 1011 (Fed.Cir.1989). Exploring the Congressional intent of the term "interested party", specific to the Court of Federal Claims' ADRA bid protest jurisdiction, the *American Federation* Court held that standing for 28 U.S.C. § 1491(b)(1), was encompassed by contractors, protesting federal procurements, not merely any interested party under the more generous APA standard. *American Federation of Government Employees v. U.S.*, 258 F.3d 1294, 1302 (Fed.Cir.2001). Here however, the facts compel finding an interest. Because it is undisputed that CNSI had, in fact, won the award initially, and the only obstacle to the DOE decision was an adverse size determination which was reversed, Plaintiff's claim is surely better than the fourth-from-the bottom bidder addressed in *IBM*, or the in-house staff complaining in *American Federation* [4].

■ Because the Code of Federal Regulation provision Defendant would use to foreclose this Court to Plaintiff, sets out a discretionary scheme for the contracting officer to whom it applies,[5] this Court has jurisdiction to weigh the reasonableness of that discretion. Under the oft-cited APA standard, an agency's discretionary decision is to be set aside only if "it is arbitrary, capricious, an abuse of [that] discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2000). As explained above, here, unlike in *Chapman*, the Plaintiff immediately filed its appeal of the adverse SBA size determination, months prior to the DOE's re-award of the contract, thus making CNSI highly interested in the exercise of the statutory discretion DOE could apply and placing it in the zone of those likely to get the award [6].

■ Intervenor's objection to this Court exercising subject matter jurisdiction is slightly more nuanced than the Government's. Intervenor characterizes Plaintiff's Complaint as a "challenge to the decision not to terminate the Catapult task order contract, not to the original decision to award that contract to Catapult." Intervenor's Motion to Dismiss, pg. 5. In its response to the two Rule 12 motions filed by Defendant and Intervenor, CNSI points to its Complaint, ¶ 45 reiterating, "CNSI asserts that DOE's decision to proceed with award to Catapult was arbitrary, capricious, and an abuse of discretion." Plaintiff's Reply Memorandum, pg. 4. In light of the 12(b)(1) obligation of construing all factual allegations made in favor of Plaintiff, the Court finds Intervenor's argument here unavailing.

### THE 12(b)(6) STANDARD OF REVIEW

■ The Intervenor moved this Court to alternatively construe its dispositive motion as arising under RCFC 12(b)(6), arguing that because CNSI is seeking relief that this Court cannot, by law, fashion, its Complaint must be dismissed. Granting a 12(b)(6) Motion is appropriate only when, based on the facts alleged in the Complaint, the law coun-

---

4. In restating the Government's argument in that case, the *IBM* Court identified a distance in economic directness, "The first [argument] is that IBM could not receive the contract even if its protest were granted, because, its bid ranked fourth-lowest . . . . . . IBM therefore had, at best, a trivial interest in the award." *IBM*, 892 F.2d, at 1011.

5. The Code of Federal Regulation reads, "Results of an SBA Size Determination: (1) A formal size determination becomes effective immediately and remains in full force and effect unless and until reversed by OHA. (2) A contracting officer may award a contract based on SBA's formal size determination. (3) If the formal size deter-mination is appealed to OHA, the OHA decision on appeal will apply to the pending procurement or sale if the decision is received before award. OHA decisions received after contract award will not apply to that procurement or sale but will have future effect, *unless the contracting officer agrees to apply the OHA decision to the procurement* or sale." 13 C.F.R. § 121.1009(g)(1)-(3) (emphasis added).

6. By contrast, in *Chapman*, the Plaintiff had *not yet appealed* the Area Office's size determination to OHA when the Agency (in that case, HUD) moved forward with a renewed bidder. *Chapman v. United States*, 63 Fed.Cl. 25, 28 (2004).

tenances no remedy. It is incumbent on the Court to accept all well-pleaded facts and it must draw all reasonable inferences in favor of the Plaintiff. *Perez v. U.S.*, 156 F.3d 1366, 1370 (Fed.Cir.1998). In this role, dismissal by the Court is proper only when the Plaintiff can "prove no set of facts" that would entitle Plaintiff to legal relief. *Southfork Systems v. U.S.*, 141 F.3d 1124, 1131 (Fed. Cir.1998).

As referred to above regarding its survival under RCFC 12(b)(1), the Plaintiff's Complaint alleges that the regulatory discretion exercised by DOE in not waiting for an OHA decision after several months moratorium on proceeding with the contract for IT services for the Yucca Mountain Project division, was irrational. By offering a set of facts that, if true and standard-attaining, could translate in into legal relief from the Court of Federal Claims, Plaintiff also survives Intervenor's alternative 12(b)(6) challenge.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's 12(b)(1) Motion to Dismiss and also **DENIES** Defendant–Intervenor's 12(b)(1), or alternatively, 12(b)(6) Motion to Dismiss.

**IT IS SO ORDERED.**