CHAPMAN LAW FIRM CO., Plaintiff,

Greenleaf Construction Co., Inc., Plaintiff–Intervenor,

v.

The UNITED STATES, Defendant,

and

Michaelson, Connor & Boul, Inc., Defendant–Intervenor.

No. 06–330C.

United States Court of Federal Claims.

Filed Under Seal June 6, 2006.

Reissued June 7, 2006.[1]

1. The Court issued this opinion under seal on June 6, 2006, and gave the parties until June 13, 2006 to identify any proposed redactions. How-ever, in a transcribed conference call with all counsel on June 7, 2006, the parties mutually agreed that no redactions were necessary.

James S. DelSordo, with whom was John J. O'Brien, Cohen Mohr LLP, Washington, D.C., for Plaintiff.

Sameer Yerawadekar, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Mark A. Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., Robert J. Brown and Kimberly Nash, Department of Housing & Urban Development, Washington, D.C., Of Counsel, for Defendant.

Alexander Brittin, Brittin Law Group, PLLC, Vienna, Virginia, with whom was Jonathan D. Shaffer, Smith Pachter McWhorter PLC, Vienna, Virginia, Of Counsel, for Plaintiff-Intervenor, Greenleaf Construction Co., Inc.

Margaret A. Dillenburg, Law Offices of Margaret Dillenburg, PC, Washington, D.C., for Defendant-Intervenor, Michaelson, Connor & Boul, Inc.

### OPINION AND ORDER

WHEELER, Judge.

In this bid protest action, filed on April 27, 2006, the Court has before it Defendant's May 19, 2006 motion to dismiss, requesting that the procuring agency be permitted to implement corrective action. For the reasons stated below, the Court finds that the agency's proposed plan for reopening discussions and obtaining an updated proposal from only one offeror is without a rational basis and is contrary to law. This proposed plan violates basic principles of competition in Federal procurement, and is not in the best interests of the Government. Accordingly, Defendant's motion to dismiss is DENIED.

*Background and Summary of Proceedings*

This case involves a procurement with a lengthy history. In August 2003, the Department of Housing & Urban Development ("HUD") began a competitive procurement of management and marketing ("M & M") services for single-family housing. HUD, through the Federal Housing Administration ("FHA"), insures approved commercial lenders against the risk of loss on loans for the purchase of single-family homes by private buyers. When an FHA-insured loan is in default, the lender forecloses on the home and conveys it to HUD. By this mechanism, HUD acquires title to thousands of homes each year. HUD employs contractors to manage and market the homes in its possession.

The present protest by the Chapman Law Firm ("Chapman") stems from HUD's Request for Proposal ("RFP") No. R–OPC–22505, issued on August 6, 2003, and from many later events. In this RFP, HUD sought competitive proposals to provide M & M services in each of 24 geographic areas throughout the United States. HUD grouped the 24 areas into four regional Home Ownership Centers ("HOCs"). The four HOCs are designated as "Philadelphia," "Atlanta," "Denver," and "Santa Ana." The dispute here concerns the second geographic area of the Philadelphia HOC (known as "P–2") encompassing Michigan and Ohio. The present protest is the latest in a two-year series of legal challenges involving the contract for the P–2 area. Chapman was an offeror for the P–2 contract, and HUD awarded the P–2 contract to Chapman on September 30, 2005.[2]

Chapman filed the present protest to challenge HUD's April 19, 2006 decision to terminate Chapman's P–2 contract for convenience, and issue a new competitive solicitation pursuant to Federal Acquisition Regulation ("FAR") § 15.206(e), "Amending the Solicitation." Plaintiff–Intervenor Greenleaf Construction Co., Inc. ("Greenleaf") is a competing offeror for the P–2 contract who potentially would remain in contention for award if HUD performed a further evaluation of the original proposals.[3] Defendant–Intervenor Michaelson, Connor & Boul, Inc. ("MCB") is the incumbent contractor in the P–2 area, and has received HUD's sole-source "bridge" contracts to continue providing the necessary M & M services for the agency until the procurement controversies are resolved.[4] MCB's current bridge contract expires on June 30, 2006, and its

new bridge contract was to begin on July 1, 2006. The proceedings in this case have been expedited so that the Court could issue its decision in advance of the June 30, 2006 expiration date.

Also relevant is a January 2006 decision of the Government Accountability Office ("GAO") where, in response to Greenleaf's protest that Chapman had made material misrepresentations in its proposal, the GAO recommended that HUD reevaluate the merits of Chapman's proposal. *Greenleaf Construction Company, Inc.,* B–293105.18, B–293105.19, 2006 CPD ¶ 19, 2006 WL 249626 (Jan. 17, 2006). HUD was in the process of performing this reevaluation of Chapman's proposal when, in April 2006, it changed course. On April 19, 2006, HUD terminated Chapman's contract for convenience, cancelled the original RFP as to the P–2 area, and issued a notice announcing the planned new solicitation for the same services.

Chapman then filed its Complaint for Declaratory and Injunctive Relief on April 27, 2006. Chapman contested HUD's termination for convenience of its P–2 contract, HUD's cancellation of the existing solicitation, and HUD's issuance of a new solicitation. At a hearing on April 28, 2006, the Court denied Chapman's Application for a Temporary Restraining Order, principally because Chapman had not shown any immediate irreparable harm, or any urgent need to maintain the status quo. Chapman filed an amended complaint on May 1, 2006, alleging that HUD improperly evaluated Chapman's proposal following the GAO's January 17, 2006 decision. By Order dated May 5, 2006, pursuant to Rule 24, the Court allowed Greenleaf and MCB to intervene.[5]

---

**2.** Due to the continuous litigation, Chapman's September 30, 2005 contract has been under stop work orders for all but five days since being awarded. Chapman has not performed any work under this contract to date.

**3.** Previously, HUD awarded the P–2 contract to Greenleaf on two occasions, but it withdrew these awards due to the perceived need to take corrective action.

**4.** MCB also is Greenleaf's proposed subcontractor in the competition with Chapman for the P–2 contract.

**5.** Greenleaf intervened on the plaintiff's side, challenging HUD's cancellation of the current solicitation, and asking for declaratory and injunctive relief directing HUD to follow GAO's January 17, 2006 recommended decision. MCB intervened on the defendant's side, to protect the continuation of its bridge contracts. As will be shown *infra,* the parties interests have become realigned as a result of HUD's decision to take corrective action. Chapman generally concurs with HUD's method of corrective action, but Greenleaf and MCB oppose it.

On May 4, 2006, Defendant filed a 17–volume Administrative Record, consisting of 7,600 pages. On May 8, 2006, the Court granted Plaintiff's motion to supplement the Administrative Record. Applying criteria from *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C.Cir.1989), the Court allowed Plaintiff to take a three-hour deposition of the Contracting Officer, Ms. Maureen Mussilli, and of HUD's Deputy Director of Single Family Housing, Ms. Laurie Maggiano. These depositions occurred in Washington, D.C. on May 10, 2006. The Court also permitted Plaintiff to furnish six other potentially relevant documents not contained in Defendant's Administrative Record. The Court based this determination on factors (1), (2), and (4) from *Esch v. Yeutter*. These factors are: (1) When agency action is not adequately explained in the record before the court; (2) When the agency failed to consider factors which are relevant to its final decision; and (4) When a case is so complex that a court needs more evidence to enable it to understand the issues clearly. *Id.* at 991. Although the Administrative Record as submitted on May 4, 2006 was ample, less than 160 pages of it addressed events since the January 17, 2006 GAO decision. Considering Plaintiff's allegations in the amended complaint, questioning HUD's motivations for its April 2006 actions, these 160 pages did not address fully the factors and reasons underlying the agency action, or factors that the agency may have failed to consider in reaching its decisions.

On May 19, 2006, Defendant filed a motion to dismiss Chapman's protest based upon HUD's decision to implement voluntary corrective action. HUD's Contracting Officer had issued written notices that day to Chapman, Greenleaf, and MCB describing HUD's proposed remedial actions. These actions were: (1) Reinstatement of Chapman's earlier existing contract for the P–2 area, and restoration of the deobligated funds associated with it; (2) Reinstatement of the P–2 portion of the original solicitation; and (3) Cancellation of HUD's proposed bridge contract with MCB, expected to begin on July 1,

2006. The notice also indicated that HUD would reinstitute the stop work order against Chapman's contract during the reevaluation of Chapman's proposal recommended by the GAO, and that HUD "intends to re-assess the manner in which that re-evaluation will be performed." (Motion to Dismiss, Exh. A). HUD issued a FedBizOpps Notice publicly announcing the reinstatement of the original solicitation for the Ohio and Michigan (P–2) area. *Id.*, Exh. B.

At a hearing on May 24, 2006 to consider Defendant's motion to dismiss, the Court expressed a need for more information about HUD's planned reevaluation, so that it could determine if HUD's proposed corrective action was "reasonable under the circumstances." *ManTech Telecomms. and Info. Sys. Corp. v. United States*, 49 Fed.Cl. 57, 65 (2001) (Court and Comptroller General will not object to an agency's proposed corrective action when it is "reasonable under the circumstances."); *DGS Contract Serv., Inc. v. United States*, 43 Fed.Cl. 227, 238 (1999) (same). In particular, the Court expressed concern about the propriety of reevaluating old proposals that had not been updated in more than a year, and it invited Defendant to submit further information about its plan for reevaluation. In an amended Scheduling Order issued the following day, the Court declined to rule upon Defendant's motion to dismiss, "pending the receipt of further information from Defendant on its proposed corrective action." (May 25, 2006 Amended Scheduling Order at 1).

On May 30, 2006, Defendant provided supplemental information in support of its motion to dismiss, indicating that HUD would take the following steps: (1) Reinstate Chapman's previously awarded contract, but issue a stop work order against the contract so that corrective action can be taken; (2) Issue an amendment to all offerors in the competitive range at both small business and unrestricted competition tiers identifying various changes that have occurred since HUD issued the original solicitation in August 2003; [6] (3) Issue a discussion letter to Chapman to

---

6. Among these changes are: (i) a request for tiered pricing to correspond to differing property volume levels over time; (ii) revise minimum and maximum volume levels; and (iii) various modifications to the Performance Work Statement. (Supp. Declaration of Maureen Musilli, May 26, 2006, ¶ 3(b)).

review matters raised in the GAO's January 17, 2006 bid protest decision, as Chapman had initially addressed in a January 27, 2006 submission to HUD containing explanatory materials; and (4) Request a final proposal revision from Chapman, ostensibly the only offeror in the small business tier, prior to requesting and reviewing proposals submitted by other offerors at the unrestricted tier. (May 30, 2006 Second Supplement in Support of Motion to Dismiss, Supp. Declaration of Maureen Musilli, dated May 26, 2006).

The remaining controversy is whether it is reasonable and lawful for HUD to reopen discussions and obtain an updated proposal only from Chapman, or whether Greenleaf also should be included. The issue is complicated by the fact that HUD employed a "cascade" method of proposal evaluation, in which it first evaluated small business proposals before considering any unrestricted proposals. Chapman is a small business. Greenleaf certified that it was a small business in its initial proposal, but the Chicago Area Office of the U.S. Small Business Administration ("SBA") sustained a size protest asserting that Greenleaf was other than small. However, the SBA's Office of Hearings and Appeals ("OHA") reversed this ruling on February 16, 2006, reinstating Greenleaf as a small business. According to the Contracting Officer, HUD has discretion to consider Greenleaf as a small business and to enter into discussions with it as well, but for other reasons, the Contracting Officer believes the Government's best interests will be served by conducting discussions only with Chapman. HUD could later consider other offerors' proposals, including Greenleaf's, if necessary. (Supp. Declaration of Maureen Musilli, ¶¶ 4–6).

Greenleaf has asserted that HUD's September 30, 2005 contract award to Chapman is invalid for lack of an affirmative determination of responsibility under FAR § 9.103(b). Pointing to multiple statements from Defendant that a responsibility determination for Chapman has not yet been made, Greenleaf argues that Chapman's contract is legally insufficient, and that the procurement therefore still is in a pre-award stage.

The issue before the Court is whether HUD's planned corrective action is reasonable and lawful under the circumstances. Analysis of the agency's reasonableness must also include consideration of whether Greenleaf is in the small business or the unrestricted tier, and whether it is in the Government's best interests to hold discussions only with Chapman. In reviewing HUD's corrective action, the Court is mindful that contracting officers have wide discretion in evaluating bids and applying procurement regulations, and that the Court should not substitute its judgment for that of the agency. The Court reviews the propriety of HUD's corrective action from the standpoint of whether it has a rational basis, and whether it is in accordance with law.

### Statement of Facts [7]

On August 6, 2003, HUD issued RFP No. R–OPC–22505 inviting competitive proposals for Management and Marketing ("M & M") services for single family homes owned by, or in the custody of, HUD. AR, Tab 1, at 6. M & M services involve the selected contractor's monitoring of mortgagee compliance with HUD's property conveyance requirements, managing the properties conveyed to HUD, marketing the properties to prospective buyers, and overseeing the sales closing activities. *Id.*

Through the competitive acquisition process, HUD intended to award up to 24 indefinite delivery, indefinite quantity contracts to those offerors whose proposals represented the best overall value to the Government, considering both price and non-price factors. AR, Tab 1, at 267. The RFP provided that the non-price factors were "significantly more important than price." AR, Tab 1, at 264–65. The six non-price factors, in descending order of importance, were: management capability/quality of proposed management plan, past performance, experience, proposed key personnel, subcontract management, and small business subcontracting

---

7. The facts herein are based upon the Administrative Record, and the depositions and documents supplementing the Administrative Record.

Citations to the Administrative Record are designated as "AR."

participation. *Id.* The contracts were to run for a base year from the date of award, and for four one-year terms at the option of the Government thereafter. AR, Tab 4, at 808.

For 14 of the 24 geographic areas, including area P–2, HUD employed a "cascading" procedure in which competition would first be considered among only eligible small business concerns. AR, Tab 1, at 267–69. If adequate competition among small businesses did not exist, then HUD could make the award on the basis of unrestricted competition. *Id.* The small business size standard for this procurement was from the North American Industrial Classification System ("NAICS"), Category 531110, "Lessors of Residential Buildings and Dwellings." In order to be considered a small business, an offeror's average revenues could not have exceeded $6,000,000 for the previous three fiscal years. AR Tab 1, at 258; FAR § 19.101, "Annual Receipts." The SBA approved HUD's "cascade" method of evaluating proposals. AR, Tab 1, at 123–24.

By the September 5, 2003 closing date for receipt of initial proposals, HUD received proposals from nine offerors for the P–2 area, each of them certifying that they were an eligible small business. AR, Tab 8, at 965. From these nine, HUD made a competitive range determination on April 26, 2004 to keep three offerors in contention for award, including Chapman and Greenleaf. AR, Tab 8, at 965–72. Following discussions, the three offerors in the competitive range submitted final proposal revisions in early May 2004. AR, Tabs 9, 10. Upon evaluating the final proposal revisions, HUD selected Greenleaf for award on July 6, 2004. AR, Tab 13, at 2050–53. HUD's Source Selection Officer determined that Greenleaf's proposal was superior to the other two small business offerors in the competitive range. AR, Tab 13, at 2050–53.

By letter dated July 14, 2004, Chapman filed a size protest with HUD's Contracting Officer challenging the small business size status of Greenleaf. AR, Tab 15, at 2062–121. The SBA's Area IV Office in Chicago determined that Greenleaf was other than a small business for the purposes of the HUD procurement, because Greenleaf was affiliat-ed with MCB, its proposed subcontractor. AR, Tab 17, at 2180–89. The SBA reviewed the Greenleaf proposal and expressed concern that MCB's role was that of a joint venture member with Greenleaf, rather than a subcontractor. *Id.* The SBA noted among other things that the frequent reference in the proposal to the "Greenleaf/MCB team" reflected MCB's control of the management and department heads for the project. *Id.*

After the third offeror in the competitive range withdrew from the competition, and following the SBA Area Office's determination that Greenleaf was not a small business for this procurement, the Contracting Officer determined that adequate competition did not exist in the small business tier, and that HUD could open the unrestricted tier. AR, Tab 31, at 3378–79. On April 19, 2005, based upon evaluations of the Chapman and Greenleaf proposals, HUD's Source Selection Officer again selected Greenleaf for award of the P–2 contract. AR, Tab 37, at 3533–36.

Upon learning of the award to Greenleaf, Chapman filed a protest at the GAO on May 2, 2005. AR, Tab 39, at 3704–14. *Chapman Law Firm Co.*, B–293105.15, B–293105.16. Chapman asserted that HUD should not have opened the unrestricted tier, because adequate competition existed at the small business tier. *Id.* In the course of the GAO proceedings, the SBA's Office of General Counsel submitted a June 2, 2005 letter to the GAO explaining that adequate competition existed at the small business tier when three small businesses were included in the competitive range. AR, Tab 45, at 3781–85. Accordingly, the small business set aside should have been maintained, and the award should not have been made to a firm found not to be a small business for this procurement. *Id.* On June 17, 2005, HUD instituted corrective action by terminating the award to Greenleaf, and indicating its intent to award to Chapman. AR, Tab 48, at 3840; Tab 51, at 3844–45.

Greenleaf then protested HUD's corrective action in this Court, challenging the cancellation of the award to Greenleaf, raising an alleged organizational conflict of interest in Chapman's proposal, and asserting that Chapman was not responsible and therefore

ineligible for award. The Court denied this protest on August 31, 2005. *Greenleaf Construction Co., Inc. v. United States,* 67 Fed. Cl. 350 (2005) (Bruggink, J.); AR, Tab 58, at 4647–59. The Court affirmed HUD's corrective action confining its source selection to the small business tier. *Id.*

On September 30, 2005, HUD awarded the P–2 contract to Chapman. AR, Tab 60, at 4682–820. Greenleaf then challenged the award to Chapman in an October 6, 2005 protest at the GAO. AR, Tab 60, at 4663–80. Greenleaf argued that: (1) Chapman had misrepresented the identity of its key personnel and subcontractors; (2) Chapman had an organizational conflict of interest because of an ownership interest in a title company whose work it would potentially supervise; and (3) HUD had not made a proper determination of Chapman's responsibility. *Id.* Following a two-day hearing, the GAO sustained Greenleaf's protest, and issued a recommendation for corrective action:

> We recommend that the agency reevaluate the merits of CLF's [8] proposal in light of our finding that, contrary to the provisions of the proposal, CLF will not use Mr. and Ms. Webb, or the TEAMS EMS system, in performing the contemplated contract. In addition, the agency should ascertain and take into account in its reevaluation whether CLF's proposal otherwise inaccurately represents the resources that CLF will use in performing the contract. We also recommend that the agency consider, and document its findings with respect to, the potential [organizational conflict of interest] that will be created by the fact that Mr. Chapman is owed significant payments over time by the purchaser of Lakeside Title. We further recommend that the contracting officer make a new determination of CLF's responsibility which takes into account the fact that Mr. Chapman has sold Lakeside Title, as well as any changes in the resources that CLF will have available to perform the contemplated contract. If, as a result of this reevaluation, the agency determines that CLF's proposal is not the best value, the agency should terminate CLF's contract and make

award in accordance with the evaluation results.

*Greenleaf Construction Company, Inc.,* B–293105.18, B–293105.19, 2006 CPD ¶ 19 (Jan. 17, 2006), at 15; AR, Tab 75, at 7433.

HUD embarked upon a reevaluation of Chapman's proposal as the GAO recommended, but then changed course in early April 2006. Based upon market research performed by HUD's Office of Single Family Asset Management (Office of Housing), AR, Tab 80, at 7495–507, the Contracting Officer determined that Chapman's September 30, 2005 contract could be terminated for convenience, and that HUD could issue a new solicitation for the P–2 area. AR, Tab 82, at 7511–83. As noted in the opening section of this opinion, however, HUD has now decided to reverse these steps by its proposed corrective action.

Following the GAO's decision, HUD did not attempt to initiate communications with Chapman, or to request additional information from Chapman. Deposition of Maureen Musilli, May 10, 2006 ("Musilli Dep."), Tr. 26–27. On January 27, 2006, however, Chapman on its own initiative submitted additional information to HUD regarding its current personnel and resources to perform the P–2 contract. Chapman Supplement to AR, ("Supp.AR"), Tab 3. HUD representatives were aware of this letter from Chapman, but they decided not to consider it. Musilli Dep. Tr. 35–37; Deposition of Laurie Maggiano, May 10, 2006 ("Maggiano Dep."), Tr. 25–27, 33.

On February 16, 2006, SBA's Office of Hearings and Appeals reversed the earlier decision of the Chicago Area Office, and reinstated Greenleaf as an eligible small business for this procurement. AR, Tab 76, at 7436–48. The OHA found that Greenleaf is not unduly reliant upon MCB. *Id.* Thus, in the present posture, where HUD would like to reopen discussions and obtain updated proposals from offerors within the small business tier, both Chapman and Greenleaf qualify as eligible small business offerors.

---

8. "CLF" is the GAO's abbreviation for the Chapman Law Firm in the decision.

## Discussion

### A. Jurisdiction and Standard of Review

The Court has jurisdiction of this matter under 28 U.S.C. § 1491(b)(1). Despite the somewhat unusual posture and lengthy history of the procurement, this case remains "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id.*

■ In a bid protest action, the Court reviews the Defendant's decision under the standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4). The APA directs a reviewing court to overturn agency actions that are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see also PGBA, LLC v. United States*, 389 F.3d 1219, 1228 (Fed.Cir. 2004); *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1132 (Fed.Cir.1998). To prevail, the protestor must show not only a significant error in the procurement process, but also that the error caused prejudice to the protestor. *Galen Med. Assoc., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed.Cir. 2004); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir.1996) (citing *LaBarge Products, Inc. v. West*, 46 F.3d 1547, 1556 (Fed.Cir.1995)).

### B. Reasonableness of HUD's Corrective Action

■ Generally, an agency's offer to institute corrective action in response to a protest will render a protest moot and constitute grounds for dismissal without prejudice. However, an agency's mere proposal of "corrective action" without some explanation of the proposed plan is insufficient. The Court must be satisfied that the proposed corrective action is "reasonable under the circumstances." *See ManTech Telecomms. and Info. Sys. Corp. v. United States*, 49 Fed.Cl. 57, 65 (2001) (Court and Comptroller General will not object to an agency's proposed corrective action when it is "reasonable under the circumstances."); *DGS Contract Serv.,*

*Inc. v. United States*, 43 Fed.Cl. 227, 238 (1999) (same); *Rockville Mailing Servs*, Inc., B–270161.2, 96–1 CPD ¶ 184, 1996 WL 166465 (April 10, 1996) at *3 (corrective action must be "appropriate to remedy the impropriety.").

■ In reviewing agency action, including whether proposed corrective action is reasonable under the circumstances, the Court may not substitute its judgment for that of the agency. *IMS Servs., Inc. v. United States*, 33 Fed.Cl. 167, 179 (1995); *see also Baird v. United States*, 1 Cl.Ct. 662, 664 (1983) ("Court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable."). The Court also must respect the discretion of the agency in evaluating bids or proposals, and in applying procurement regulations. *See CACI Field Servs., Inc. v. United States*, 13 Cl.Ct. 718, 725 (1987), aff'd 854 F.2d 464 (Fed.Cir.1988) (table); *NKF Eng'g, Inc. v. United States*, 805 F.2d 372, 377 n. 7 (Fed. Cir.1986). "While contracting officers may not act illegally, they are entitled to exercise discretion upon a broad range of issues confronting them, including 'consideration of price, judgment, skill, ability, capacity, and integrity' in the solicitation of business with whom the government will enter into contracts." *Keene Corp. v. United States*, 584 F.Supp. 1394, 1401 (D.Del.1984) (quoting *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 (5th Cir.1978)).

With this framework of the Court's limited scope of review, it is instructive to analyze the circumstances now confronting HUD's Contracting Officer.

First, HUD desires to follow, for good reason, the GAO's recommended corrective action in *Greenleaf Construction Company, Inc.*, B–293105.18, B–293105.19, 2006 CPD ¶ 19, 2006 WL 249626 (Jan. 17, 2006). To implement corrective action, HUD must review whether Chapman previously has misrepresented its resources in any respect, confirm whether an organizational conflict of interest still exists, and make a new determination of Chapman's responsibility.

Second, HUD desires to update its work requirements through an amendment to the solicitation, which will include a change to tiered pricing to correspond to differing property volume levels over time, and a revision of the agency's minimum and maximum volume levels.

Third, the Chapman and Greenleaf proposals currently before HUD are more than a year old,[9] and likely do not reflect the offerors' current personnel and resources. While the GAO did not explicitly state whether the agency should reopen discussions and obtain updated proposals, the Court does not see how the agency could otherwise determine an offeror's current resources.

Fourth, under its "cascade" method of evaluating proposals described in the solicitation, HUD currently has two offerors in the small business tier, as both Chapman and Greenleaf are eligible small businesses.

In considering all of these factors, the Court finds that HUD should reopen discussions and request updated proposals from both Chapman and Greenleaf. The agency's proposed approach of negotiating only with Chapman would be highly prejudicial to Greenleaf, and would not be in the best interests of the Government. In particular, where HUD is now introducing a new tiered pricing approach, the agency certainly will receive better prices through competition between Chapman and Greenleaf than it would through a sole-source negotiation with Chapman.

Excluding Greenleaf from the competition at a time when the agency's requirements are being amended violates the most basic competition requirements in Federal procurement. Agencies must provide full and open competition to the greatest extent practicable in accordance with the procurement laws. *See* Competition in Contracting Act ("CICA"), 41 U.S.C. § 253 et *seq.* When agencies conduct discussions with offerors and obtain updated final proposal revisions, they must do so with all offerors in the competitive range. 41 U.S.C. § 253(b), (d); FAR § 15.306. Case law and common sense counsel that close scrutiny is appropriate

where an agency has included only one firm in the competitive range, and proposes to engage in sole source negotiations with that firm. *Bean Stuyvesant, LLC v. United States,* 48 Fed.Cl. 303, 339 (2000); *Pikes Peak Family Housing, LLC v. United States,* 40 Fed.Cl. 673, 678 (1998); *see also Birch & Davis Int'l, Inc. v. Christopher,* 4 F.3d 970, 974 (Fed.Cir.1993) (under earlier version of regulation, Court requires "close scrutiny" to agency evaluations resulting in a competitive range of one offeror).

■ The fundamental competition rules are not altered by the fact that a contract has been awarded to Chapman. Where a contract has been awarded, but a protest has been sustained and the recommended corrective action is to make a new best value determination, the standard CICA and FAR competition rules apply. In these circumstances, if an agency conducts discussions, it must do so with all offerors in the competitive range. *Rockwell Electronic Commerce Corp.,* B–286201.6, 2001 CPD ¶ 162, 2001 WL 1105137 (Aug. 30, 2001) (protest sustained where agency reopened discussions and requested proposal revisions from only one offeror in the competitive range); *The Futures Group Int'l, Inc.,* B–281274.5—.7, 2000 CPD ¶ 148, 2000 WL 1411090 (March 10, 2000) (second protest sustained where agency corrective action permitted awardee who was performing the contract to make changes to its cost proposal without the agency conducting discussions and requesting best and final offer from protester, another competitive range offeror); *Paramax Sys. Corp.; CAE–Link Corp.,* B–253098.4—.5, 93–2 CPD ¶ 282, 1993 WL 485205 (Oct. 27, 1993) at 4 ("The conduct of discussions with one offeror requires that discussions be conducted with all offerors whose proposals are within the competitive range and that the offerors have an opportunity to submit revised offers."); *see also National Shower Express, Inc.,* B–293970, B–293970.2, 2004 CPD ¶ 140, 2004 WL 1586769 (July 15, 2004) (where discussions are reopened with one offeror after receipt of final proposals, an agency must

---

9. The most recent final proposal revisions submitted by Chapman and Greenleaf are dated

January 20 and 21, 2005, respectively. AR, Tabs 26, 27.

hold discussions with all offerors whose proposals are in the competitive range).

■ Defendant certainly is aware of these competition rules ingrained in Federal procurement, but argues that Greenleaf cannot be considered in the small business tier because of the effect of two regulations regarding SBA OHA decisions. To summarize the sequence of events, the SBA's Chicago Area Office found Greenleaf to be other than small in a decision dated July 29, 2004. AR, Tab 17, at 2180–89. HUD awarded the current P–2 contract to Chapman on September 30, 2005. AR, Tab 60, at 4682–820. The GAO issued its decision on January 17, 2006 questioning the award to Chapman and requiring corrective action. *Greenleaf Construction Company, Inc.*, B–293105.18, B–293105.19, 2006 CPD ¶ 19, 2006 WL 249626 (Jan. 17, 2006). The SBA OHA decision reinstating Greenleaf as a small business for this procurement is dated February 16, 2006. AR, Tab 76, at 7436–7448.

The SBA's regulations, 13 C.F.R. § 121.1009(g)(3), currently state as follows:

If the formal size determination is appealed to OHA, the OHA decision on appeal will apply to the pending procurement or sale if the decision is received before award. OHA decisions received after contract award will not apply to that procurement or sale, but will have future effect,

unless the contracting officer agrees to apply the OHA decision to the procurement or sale.

*Id.* (Emphasis added). The SBA amended this regulation, effective June 21, 2004,[10] to allow contracting officers discretion in considering OHA decisions after contract award, but the pending HUD solicitation is dated August 6, 2003. Therefore, says Defendant, the amended regulation does not apply to this procurement, and the contracting officer has no discretion to consider Greenleaf in the small business tier. The comparable FAR provision, found at FAR § 19.302(i), also does not provide for any contracting officer discretion in the matter. It provides that "[t]he SBA decision, if received before award, will apply to the pending acquisition," but that "SBA rulings received after award shall not apply to that acquisition." *Id.*[11]

There are at least two problems with Defendant's failure to give effect to the SBA OHA decision, and its consequent refusal to consider Greenleaf in the small business tier.

First, as Greenleaf points out, the agency has not completed its determination of Chapman's responsibility. FAR requires that a valid award cannot be made "unless the contracting officer makes an affirmative determination of responsibility." FAR § 9.103(b). Defendant has asserted repeatedly in these proceedings that it has not yet made a new responsibility determination for Chapman.[12]

10. *See* 69 Fed.Reg. 29192, at 29192, 29207 (May 21, 2004).

11. Two decisions of this Court have interpreted these SBA and FAR provisions, upholding the contracting officer's discretion in one case, but not in the other. *Client Network Servs., Inc. v. United States*, 64 Fed.Cl. 784, 788–89 & nn. 5–6 (2005) (relying on 13 C.F.R. § 121.1009(g)(1)-(3) to find that contracting officer discretion existed); *Chapman Law Firm v. United States*, 63 Fed.Cl. 25, 27–28, 35 & n. 2 (2004) (recognizing amendment to 13 C.F.R. § 121.1009(g)(3), but ruling that FAR § 19.302 constituted a bar against retroactive application of post-award OHA decisions).

12. Defendant's May 19, 2006 Motion to Dismiss at 11 ("No decision can be made regarding the propriety of the award to Chapman until the re-evaluation is completed."); Defendant's May 23, 2006 Supplement in Support of its Motion to Dismiss, at 3 ("At this early stage, HUD has not completed its re-assessment, and accordingly cannot represent how it plans to proceed with

the re-evaluation."); *Id.* at 3–4 ("HUD had not yet completed its responsibility determination of Chapman pursuant to GAO's recommendation, and therefore, contrary to the implication in Chapman's third request for relief, had not determined whether Chapman's proposal represented the best value to the Government."); *Id.* at 4 ("Absent the completion of the re-evaluation, the responsibility determination, and the final source selection decision, the steps HUD has taken thus far constitute only 'intermediate' agency actions capable of reconsideration."); *Id.* at 7, n. 3 (". . . as HUD does not yet have all of the information it needs to make a responsibility determination."); April 19, 2006 Contracting Officer statement, AR, Tab 82, at 7516 ("In other words, were a responsibility determination at issue at this time, I could not make a positive determination of financial responsibility regarding CLF without obtaining additional information."); HUD's March 23, 2006 letter to GAO describing planned corrective action, AR, Tab 77, at 7449 ("The GAO also recommended that HUD make a new determination of CLF's responsibility.... In

Until that determination is made, the agency should not consider this procurement as being in the "after contract award" stage for purposes of interpreting the FAR and SBA regulations. The agency should interpret these regulations as applying to a pre-award circumstance, in which case Greenleaf should be considered in the small business tier.

Second, even if the current state of HUD's procurement could be described as "after contract award," it is doubtful that the SBA and FAR provisions regarding SBA OHA decisions were intended to trump the overarching CICA competition requirements. Most likely, these regulations were intended to promote a public policy of finality in contract award, and to discourage the wasteful practice of changing contractors after performance has begun, instead giving only prospective effect to OHA decisions. In the present case, Chapman has performed no work under its September 30, 2005 contract, and the procurement still is very much in a competitive mode, with the agency desiring updated proposals to a new set of requirements. In light of the fact that Greenleaf was the selected offeror on two prior occasions, and has been reinstated as a small business, HUD would stand logic on its head by now denying Greenleaf the opportunity to compete. Presumably, Greenleaf today would be completing the second year of its contract performance if not for an erroneous SBA Area Office decision in July 2004. AR, Tab 17, at 2180–89.

Moreover, the issue addressed in the SBA OHA decision was whether Greenleaf was affiliated with its subcontractor MCB due to an alleged joint venture relationship for this particular HUD procurement. The SBA's policy is to dismiss an OHA appeal as moot where the contract has been finally awarded to another offeror and the appeal relates only to that procurement. *See, e.g., WellChoice Medical, Ltd.,* SBA No. SIZ–4777, April 11, 2006 (OHA will dismiss an appeal as moot when it raises only contract-specific issues and contract has been awarded without challenge because a decision on the merits has no future applicability). Here, the SBA OHA

did not dismiss Greenleaf's appeal. Rather, the SBA OHA concluded that Greenleaf is small for the purposes of this procurement. If the SBA OHA believed that its decision on appeal did not apply to this procurement, presumably it would not have issued an opinion.

The outcome described above is in accord with sound procurement policy. The Government will emerge a beneficiary, as it will certainly enhance competition to allow Greenleaf and Chapman to compete in the reopened negotiations. The integrity of the procurement process also is enhanced, where both entities in the small business tier will have the opportunity to submit proposals in response to amended agency requirements. For the agency to exclude Greenleaf from competing in the small business tier where the SBA OHA has recently ruled that Greenleaf is a small business would lack any rational basis.

The Court appreciates that HUD is facing a potential time constraint with the impending June 30, 2006 expiration of MCB's current "bridge" contract—HUD must have these M & M services in place at all times. However, HUD may well be able to conduct the necessary discussions, and obtain and evaluate updated proposals, before the June 30, 2006 expiration date. If more time is needed, HUD should be able to reach some accommodation with MCB to continue M & M services for a short time. To the extent that a time constraint exists, it is largely of the agency's own making. HUD knew or should have known shortly after the SBA OHA decision on February 16, 2006 that Greenleaf had been reinstated as a small business. At that point, the agency could have begun the process described herein. Although the available time until June 30, 2006 is now more compressed, HUD simply must observe the overriding competition requirements even if it means working on an expedited basis to achieve its objectives.

*Conclusion*

Based upon the foregoing, the Court finds that HUD's proposed corrective action of

---

this regard, the Contracting Officer has requested that the DCAA review updated resource infor-

mation in the form of a risk assessment to assist in responsibility determinations.").

reopening discussions and requesting an updated proposal from only one offeror lacks a rational basis and is contrary to law. Accordingly, Defendant's motion to dismiss is DENIED.

All parties are requested to submit any proposed redactions to this Opinion and Order within seven days, on or before June 13, 2006, after which date it will be reissued to the public.

IT IS SO ORDERED.